IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RETURN ON INTELLIGENCE, LTD. : | CIVIL ACTION |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| GREGORY SHENKMAN, : | |
| Defendant. : | No. 16-0317 |

**MEMORANDUM**

**DITTER, J.** August 2, 2017

Plaintiffs Return on Intelligence, Ltd. ("ROI, Ltd.") and Return on Intelligence, Inc. ("ROI, Inc.") (collectively, "ROI" or "Plaintiffs") allege that they were harmed as the result of Defendant Gregory Shenkman's illegal interference with a sale of their business assets. Before me is Shenkman's motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and lack of proper venue pursuant to Federal Rule of Civil Procedure 12(b)(1), (2) and (3). Jurisdictional discovery is now complete. For the reasons discussed, Defendant's motion will be granted.

**I.  FACTS:**

ROI is a global technology services firm providing technology consulting, systems integration and commercial software solutions services. ROI alleges that their principal place of business and headquarters is in King of Prussia, Pennsylvania, and allege complete diversity between them and Defendant Shenkman, who is a citizen of California. According to ROI's complaint, Shenkman is a shareholder and sometime

director of ROI who, between 2006 and 2012, contributed millions of dollars to ROI, personally and through a family trust. Shenkman contends that ROI owes him and his family trust nearly $4 million in principal and interest. ROI alleges that Shenkman harmed them in his effort to collect this money, ultimately resulting in Shenkman sending a letter to a prospective purchaser of ROI's assets, EPAM Systems, Inc., located in Pennsylvania. As a result of his actions, EPAM refused to move ahead with the purchase of ROI.

## II.  DISCUSSION:

### A.  SUBJECT MATTER JURISDICTION

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed for lack of subject matter jurisdiction. Shenkman contends that complete diversity of citizenship is lacking and the court has no subject matter jurisdiction because he and ROI, Inc., are citizens of California. Plaintiffs counter that subject matter jurisdiction is established by the fact that one of the two plaintiffs, ROI, Inc., is a Delaware corporation which claims that its principal place of business is Pennsylvania, thus establishing the requisite diversity.[1] Alternatively, ROI, Inc., claims that its principal place of business is Massachusetts.[2] *See* Pls.' Mem. of Law in Opp'n, at 13-16 (Doc. No. 16). While

---

[1] The second plaintiff, ROI, Ltd., is a holding company incorporated in Bermuda with no active U.S. operations.

[2] Plaintiffs concede that their CEO ultimately approves all major decisions in Boston, Massachusetts. *See* Pls.' Mem. of Law in Opp'n., at 2.

interesting, this latter observation does not change the fact that ROI asserts it is a citizen of Pennsylvania.

The party invoking jurisdiction must justify his allegations by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). I determine the citizenship of the parties based on the relevant facts at the time the complaint was filed. *Washington v. Hovensa, LLC*, 652 F.3d 340, 344 (3d Cir. 2011).

The Supreme Court has defined a "principal place of business" as follows:

> "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.,* the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Hertz Corp. v. Friend*, 559 U.S. 77, 92 93, 130 S. Ct. 1181, 1192, 175 L. Ed. 2d 1029 (2010).

The Court has pointed out that "in this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet" making a "nerve-center" test difficult. *Id.* at 95-96. "That said, [the Supreme Court] test nonetheless points courts in a single direction, towards the center of overall direction, control, and coordination." *Id.* at 96. The burden of persuasion for establishing diversity jurisdiction

remains on the party asserting it. *Id.* (citations omitted).

This action was commenced on January 26, 2016. Discovery has revealed that little business was conducted out of ROI's Pennsylvania in the time leading up to the filing of the complaint. ROI's Board of Directors met in Massachusetts in October 2015. *See* Def.'s Supp. Br. in Supp. Mot. to Dismiss (Doc. No. 42), Ex. E, Resp. to Interrog. No. 2. Although it appears that some correspondence was sent to the Pennsylvania office, it was also sent to ROI's California office. *See* Pls.' Mem. of Law in Opp'n, at 8; Def.'s Supp. Br. in Supp. Mot. to Dismiss (Doc. No. 42), Ex. E, Resp. to Interrog. No. 1. No employees of the Pennsylvania office had the authority to make budgeting, financial, planning, strategy or business decisions on ROI's behalf. *See* Novak Declaration (Doc. No. 16-1), par. 22, 25; Def.'s Supp. Br. in Supp. Mot. to Dismiss (Doc. No. 42), Ex. E, Resp. to Interrog. No. 3. Instead, those decisions were made by the advisory management board members all of whom were based outside of Pennsylvania.[3] *Id.* Indeed, at the time of the filing of the complaint, ROI concedes that they only had seven remaining employees and executives in the United States who worked outside of Pennsylvania "for the most part." *See* Pls.' Mem. of Law in Opp'n, at 6; Novak Declaration (Doc. No. 16-1), par. 21.

ROI has failed to establish that its office in Pennsylvania was the "nerve center"

---

[3] With the notable exception of Raffaele Iodice, a Vice President of ROI, who resides in New Jersey but sporadically conducted business out the King of Prussia, Pennsylvania, office. *See* Novak Declaration (Doc. No. 16-1), par. 22; Def.'s Supp. Br. in Supp. Mot. to Dismiss (Doc. No. 42), Ex. E, Resp. to Interrog. No. 3.

of its operations. The overall direction, control and coordination of the business was conducted by its Board members residing outside of Pennsylvania.

## B. PERSONAL JURISDICTION

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-472 (1985) (citations omitted). There are two types of personal jurisdiction, general and specific.

### 1. General Jurisdiction

General jurisdiction may be exercised over a defendant if the defendant's "'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman,* 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011)). ROI initially failed to allege that this court had general jurisdiction over this matter. *See* Pls.' Mem. of Law in Opp'n, at 17-24. Although it now appears that Plaintiffs are attempting to claim that the court has general jurisdiction over Shenkman, *see* Pls.' Supp. Submission, at 13 (Doc. No. 43), they have failed to allege the requisite "continuous and systematic" affiliations required for general jurisdiction. *Daimler AG,* 134 S. Ct. at 761. Indeed, Plaintiffs' sole reference to general jurisdiction is the assertion that "Shenkman's numerous communications with EPAM are sufficient to

5

lend support to this Court's exercising general jurisdiction over Mr. Shenkman since it appears that he regularly conducted business in this forum." *See* Pls.' Supp. Submission, at 13.

Discovery fails to support Plaintiffs' claim that Shenkman regularly conducted business in Pennsylvnia. Prior to appearing in Pennsylvania for his deposition, Shenkman had not visited Pennsylvania for more than 20 years, nor does he own any businesses or real estate in Pennsylvania. *See* Def.'s Supp. Br. in Supp. Mot. to Dismiss, Ex. A, Shenkman Dep., at 20:8-20:12, 24:12-20. Although Shenkman did communicate with Arkady Dobkin, the CEO of EPAM, in 2015, Shenkman testified that those communications were limited to a business introduction unrelated to ROI. *Id*. at 59-61, 64. He also noted that the introduction was a favor performed without any expectation of economic benefit. *Id*. at 106-107. Review of documentary evidence produced by EPAM confirms that a number of brief emails were exchanged between Shenkman, Arkady Dobkin and Viktar Dvorkin, another EPAM employee, from March - November 2015 in relation to setting up a potential business relationship with a third party. *See* Pls' Supp. Br. in Supp. Mot. to Dismiss, Ex. 3. These communications do not provide a basis for a finding of "continuous and systematic" affiliations. *Daimler AG,* 134 S. Ct. at 761. As a result, I conclude Plaintiffs have failed to establish general jurisdiction.

### 2. Specific Jurisdiction

Specific jurisdiction over an out-of-state defendant can be established when a defendant "purposefully avails itself of the privilege of conducting activities in the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881-882 (2011). Here, Plaintiffs must show that Shenkman did something in Pennsylvania that harmed them. Putting it slightly differently, Plaintiffs must show that Shenkman's conduct was of the type that he could reasonably expect to be hailed into a Pennylvania court if what he had done caused harm. It is not enough for ROI to have suffered harm in Pennsylvania by something Shenkman did elsewhere.

Plaintiffs have alleged that this court has personal jurisdiction over Shenkman because he "knowingly reached out to ROI and ROI's business partner in Pennsylvania and broke the deal" by sending a letter to EPAM. *See* Pls.' Mem. of Law in Opp'n, at 2. ROI bases its allegation that Shenkman sent a letter to EPAM upon a demand letter Shenkman's lawyer sent to ROI's California and Bermuda offices on July 13, 2015. *See* Compl. at par. 37 & Ex. B. Attached to the demand letter was a draft of a payoff letter addressed to EPAM. *Id.* at 39 & Ex. C. The payoff letter outlined the money Shenkman believed he was owed by ROI - $3,873,755 - in the event that EPAM were to purchase ROI. *Id.* Shenkman asked ROI to forward the payoff letter to EPAM. *Id.* at 39 & Ex. B. ROI declined to send the letter to EPAM and advised Shenkman that he

should not contact EPAM or interfere with the EPAM deal in any way. *Id.* at 42-43, Ex. D. There is no evidence that Shenkman forwarded the letter or reached out to EPAM regarding the matter. Shenkman testified that he did not send a letter to EPAM and did not recall discussing a letter with EPAM. *See* Dep. of Shenkman, 11/11/16, at 87:9-89:1; 93:3-12; *see also* Shenkman Decl. (Doc. No. 17-2), Ex. 1. Moreover, EPAM's CEO, Arkadiy Dobkin, testified that he had not seen the letter Shenkman had sent to ROI prior to his deposition. *See* Dep. of Dobkin, 9/14/16, at 45:10-46:6. Dobkin also testified that he had not received any communication from Shenkman about the ROI deal and that he only learned of the dispute between ROI and Shenkman from ROI. *Id.* at 35:7-16. Discovery has not revealed any evidence that Shenkman contacted EPAM in relation to its purchase of ROI. Since Shenkman did nothing in Pennsylvania regarding ROI, there is no basis for finding specific jurisdiction

ROI also alleges, however, that specific jurisdiction is established by the fact that Shenkman harmed the business relationship between ROI and EPAM in other forums and caused them to close the office in Pennsylvania.[4] I disagree. Essentially ROI is arguing that Shenkman's business dealings with EPAM, though unrelated to the sale of ROI, were conducted at the expense of ROI's relationship with EPAM and consituted a breach of his fiduciary duty to ROI. This allegation is insufficient to form the basis for specific jurisdiction.

---

[4] ROI claims he harmed the business relationship by filing a frivolous arbitration claim in California.

Plaintiffs have failed to meet the minimum contacts requirement. There is no personal jurisdiction.[5]

### III. CONCLUSION:

ROI has failed to carry its burden of establishing that its principal place of business was in Pennsylvania at the time the complaint was filed. Because ROI has not established complete diversity by a preponderance of the evidence, this court lacks subject matter jurisdiction. Moreover, Shenkman's contacts with the Eastern District of Pennsylvania are insufficient to establish personal jurisdiction.

I conclude that granting leave for Plaintiffs to amend their complaint would be futile. Accordingly, Defendant's motion to dismiss will be granted.

An appropriate order follows.

---

[5] Since this court has no jurisdiction over this matter, there is no need to discuss the issue of venue. "The question of personal jurisdiction, which goes to the court's power to exercise control over parties, it typically decided in advance of venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).